UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

STEVEN PICARD,

                Plaintiff,                      Case No. 13-cv-14552

v                                        Honorable Thomas L. Ludington

AMERICAN BOARD OF FAMILY MEDICINE,

                Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE AND DENYING IN
PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

On October 31, 2013, Plaintiff Steven Picard filed suit against the American Board of
Family Medicine, alleging (1) violation of common law due process, (2) defamation, and (3)
tortious interference with a business relationship and contract. Compl., ECF No. 1. Picard, a
physician, claims that ABFM maliciously denied him Board Certification and then made
defamatory statements to his employer about the status of his medical license.

On January 29, 2014, ABFM filed two motions to dismiss. The first motion asserts that
this Court lacks personal jurisdiction over ABFM and that venue is not proper in the Eastern
District of Michigan. *See* Mot. to Change Venue, ECF No. 5. The second motion to dismiss
asserts that Picard has failed to state a claim for which relief may be granted under Federal Rule
of Civil Procedure 12(b)(6). *See* Mot. to Dismiss, ECF No. 4. For the reasons explained below,
the Court will deny ABFM's motion to dismiss for lack of jurisdiction and venue and will grant
in part and deny in part ABFM's motion to dismiss under Rule 12(b)(6).

# I

ABFM is a corporate medical specialty board that certifies physicians in the medical specialty of family medicine. Mot. to Dismiss 8, ECF No. 4. Incorporated in Missouri in 1969, ABFM is the second largest medical specialty board in the United States. ABFM is a voluntary, not-for-profit, private organization whose purposes include:

- Improving the quality of medical care available to the public

- Establishing and maintaining standards of excellence in the specialty of Family Medicine

- Improving the standards of medical education for training in Family Medicine

- Determining by evaluation the fitness of specialists in Family Medicine who apply for and hold certificates

About ABFM, The American Board of Family Medicine (March 6, 2014) https://www.theabfm.org/about/index.aspx. ABFM was founded to "protect the public by assessing and certifying doctors who meet specific educational, training and professional requirements." *Id*.

ABFM is independent from state medical licensing boards. To practice medicine in the United States, doctors must be licensed by the state in which they work. Once a doctor is licensed through the state, he or she may then apply to become Board Certified through ABFM. "Board Certified family physicians voluntarily meet additional standards beyond basic licensing," and Board certification indicates that the doctor is qualified to practice in the area of family medicine. Public/Patients, The American Board of Family Medicine (March 6, 2014) https://www.theabfm.org/public/index.aspx. "Board certification is a meaningful indicator that a doctor has the knowledge, experience and skills to provide high-quality patient care. Although board certification is voluntary, ABFM certification is recognized throughout the world as

signifying excellence in the practice of Family Medicine." *Id*. Although ABFM Board Certification is not required to practice medicine in Michigan, it is an advantageous credential.

To obtain certification through ABFM, a candidate must satisfy the qualification requirements set forth in ABFM's Maintenance of Certification Family Physician Program. Mot. to Dismiss 8. The Program is comprised of four components: Professionalism, Self-Assessment and Lifelong Learning, Cognitive Expertise, and Performance in Practice. *Id*.

The component at issue in this litigation, Professionalism, requires an ABFM-certified physician to maintain a valid, full, and unrestricted license—as defined by ABFM Guidelines— to practice medicine. *Id*. A license will be deemed "restricted" if it is:

> subject to special conditions, requirements, or limitations . . . which affect, restrict, alter, or constrain the practice of medicine (including, but not limited to, supervision, chaperoning during patient examination, limitations on the prescription of medicine, or limitation on site or type of practice and limitation on hours of work.

Compl. ¶ 34 (emphasis removed). Pursuant to the Guidelines, ABFM will revoke a physician's certification if the physician's medical license is suspended or restricted. *Id*.

**A**

Picard is a physician licensed with the Michigan Board of Medicine, and he began practicing family medicine in Michigan in 1994. Compl. ¶ 7. In 1998, Picard obtained ABFM Board Certification and Diplomate subspecialist status  and maintained the certification until 2011. *Id*. ¶ 9-10.

Picard, a recovering drug and alcohol addict, suffered a relapse in January 2011. *Id*. ¶ 11-12. Picard self-reported the relapse to Michigan's Health Professional Recovery Program.[1] *Id*. The HPRP "is a confidential, non-disciplinary program designed to assist licensed or registered

---

[1] The HPRP is administered through a contract with the Michigan Department of Licensing and Regulatory Affairs, which also oversees the Michigan Board of Medicine. http://www.hprp.org/.

health professionals recover from substance abuse/chemical dependency problems or a mental health problem. Health Professional Recovery Program, Department of Licensing and Regulatory Affairs, (March 6, 2014) http://www.michigan.gov/lara/0,4601,7-154-35299_63294_27648---,00.html. HPRP supports the recovery of physicians so they may safely return to practice. Physician participation in HPRP is voluntary. If an HPRP participant successfully completes the recovery program, then all his or her non-disciplinary records are destroyed after five years. However, if a physician fails to complete the HPRP recovery program, the Michigan Board of Medicine may suspend that physician's license.

Picard claims that, due to "a paperwork glitch," his file with the HPRP was mistakenly closed. This inadvertent closure resulted in the Michigan Board of Medicine Disciplinary Subcommittee suspending Picard's medical license in March 2011. Compl. ¶ 13.

The Michigan Board of Medicine reversed its decision suspending Picard's medical license four months later after Picard provided verification that he had been endorsed safe to practice medicine by the HPRP. In addition to reversing the suspension, the Michigan Board of Medicine required Picard to participate in a monitoring agreement with the HPRP, which is a regular requirement HPRP imposes. Resp. Ex. D, ECF No. 10.

On April 20, 2012, Picard signed a monitoring agreement with HPRP that would remain in effect for three years. Resp. Ex. C. The monitoring agreement requires, among other things, that Picard abstain from ingesting any mood-altering substances, participate in rehabilitation and therapy sessions, and acquire advanced approval before making any changes to his employment. *Id*.

**B**

On November 2, 2012, Picard obtained employment as a family physician with MidMichigan Community Health Services, a rural community health center located in Houghton Lake, Michigan. *Id*. ¶ 20. Picard informed MidMichigan that he "was ABFM Certified and MC-FP Eligible, held a Full/Unrestricted Michigan medical license, and was DEA-Certified." *Id*. ¶ 19. However, while performing its credentialing process for Picard in December 2012, MidMichigan discovered that Picard was not, in fact, ABFM Board Certified. *Id*. ¶ 21.

Picard contacted ABFM about the status of his certification on December 27, 2012. An ABFM representative explained that ABFM had sent a notice of Picard's certification revocation to his previous employer on March 28, 2011. *Id*. ¶ 21-23. The representative stated that the revocation was based on the Disciplinary Subcommittee's March 2011 termination of Picard's medical license.

Picard replied that (1) he never received notice of a revocation; (2) the suspension of his medical license was made in error; and (3) he now had a "Full/Unrestricted Status" medical license in Michigan. ABFM responded that it would reinstate Picard's certification if he provided proof that he had an unrestricted medical license. Picard faxed ABFM proof of his reinstated medical license as well as the Monitoring Agreement. *Id*. ¶ 24.

On January 11, 2013, ABFM e-mailed and mailed a letter to Picard's employer, MidMichigan, stating that the Monitoring Agreement violates ABFM's Guidelines, which require "all medical licenses held by the physician to be currently valid, full, and unrestricted." Resp. Ex. I. Accordingly, Picard's certification would "remain rescinded until the conditions/restrictions have been removed from [his] license, or [his] license has been reinstated

to full and unrestricted status." *Id*. The letter also stated that Picard had twenty days to appeal ABFM's decision. *Id*.

Picard and his counsel timely appealed ABFM's decision denying him certification, arguing that the State of Michigan Department of Licensing and Regulatory Affairs had deemed his license "Full/Unrestricted." Compl. ¶ 27. Picard's counsel also sent a letter to ABFM explaining that Picard would lose his job at MidMichigan if he was denied certification.

On February 8, 2013, MidMichigan terminated Picard's employment as a result of his inability to gain ABFM certification. *Id*. ¶ 28.

On May 8, 2013, ABFM e-mailed a letter to Picard's counsel explaining that ABFM denied Picard's appeal because the Monitoring Agreement was a restriction on his medical license. ABFM further explained in a July 10, 2013 letter that "the limitations placed against [Picard's] medical license are in violation of ABFM policies on Professionalism," because the "limitations constitute a restriction within the meaning of the policies as defined by ABFM." Resp. Ex. U.

## II

In its first motion, ABFM asserts that it is not subject to personal jurisdiction in Michigan, and, even if it is, venue is not proper in the Eastern District of Michigan. ABFM is incorporated in Missouri and domiciled in Kentucky, and it claims to conduct all of its business activities from its home office in Kentucky. Mot. to Change Venue 19. Accordingly, ABFM contends that it lacks the "minimum contacts" necessary to subject it to personal jurisdiction in Michigan.

On a motion to dismiss for want of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that jurisdiction exists. *Neogen*

*Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). The plaintiff may not rely solely on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and a district court should not weigh "the controverting assertions of the party seeking dismissal." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). A plaintiff can meet this burden by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen*, 282 F.3d at 887.

In analyzing personal jurisdiction in diversity actions, federal courts must look to the law of the forum state to determine the reach of the district court's personal jurisdiction over the parties, which is then subject to the limits of constitutional due process. *Air Prods.*, 503 F.3d at 550. In Michigan, personal jurisdiction may be asserted over a corporation based on either general personal jurisdiction, Mich. Comp. Laws § 600.711, or limited personal jurisdiction, Mich Comp. Laws § 600.715. Picard claims that ABFM is subject to both general personal jurisdiction and limited personal jurisdiction in Michigan.

### A

General jurisdiction exists over any corporation that (1) is incorporated in Michigan, (2) consents to jurisdiction, or (3) engages in continuous and systematic business in Michigan. Mich. Comp. Laws § 600.711; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 421 (1984) (holding that general jurisdiction is consistent with due process when the corporation's relationship with the state is "of a continuous and systematic nature") (internal quotations omitted). "A foreign corporation must actually be present within the forum state on a regular basis, either personally or through an independent agent, in order to be subjected to

- 7 -

general personal jurisdiction." *Caldwell v. CheapCaribbean.com, Inc.*, 2010 WL 3603778, at *4 (E.D. Mich. Sept. 8, 2010) (quoting *Kircos v. Lola Cars Ltd.*, 296 N.W.2d 32, 35 (Mich. Ct. App. 1980)).

ABFM is not incorporated in Michigan, nor has it consented to jurisdiction, and therefore Picard must show that ABFM engaged in continuous and systematic business in Michigan before this Court may exercise general jurisdiction over ABFM. Picard contends that because "ABFM openly and deliberately seeks and solicits Michigan physicians," "invites the Michigan public to use its website," and "urges the public to encourage their Michigan physicians to become ABFM Certified," ABFM maintains continuous and systematic business contact with the state of Michigan.

However, all of these alleged contacts are maintained through the use of an interactive website—not through the presence of ABFM within Michigan. Picard has not alleged that ABFM or its agents were ever "actually present" within Michigan: ABFM does not have any employees, representatives, agents, officers, shareholders, or independent contractors in the state; it does not have an office, telephone number, mailing address, or post office box in Michigan; nor does it maintain any real or personal property within the state. Simply maintaining a website, without any type of physical presence within Michigan, is an insufficient contact on which to obtain general jurisdiction over ABFM. *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) ("[T]he fact that [the defendant] maintains a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction."). Accordingly, ABFM is not subject to general personal jurisdiction in Michigan.

**B**

Limited personal jurisdiction may be exercised over a defendant who has certain minimum contacts with the forum over claims that arise from or relate to those contacts. *Theunissen*, 935 F.2d at 1459-61. In Michigan, limited personal jurisdiction may be exercised over a corporation that has one of the following relationships with the state:

(1)     The transaction of any business within the state.

(2)     The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3)     The ownership, use, or possession of any real or tangible personal property situated within the state.

(4)     Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5)     Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Mich. Comp. Laws § 600.715.   Picard argues that ABFM is subject to limited personal jurisdiction in Michigan because it transacted business in the state and caused consequences to occur in the state resulting in an action for tort.

In reference to "the transaction of any business" in Michigan, the Michigan Supreme Court has held that "[t]he word 'any' means just what it says. It includes 'each' and 'every' . . . . It comprehends the 'slightest.'" *Sifers v. Horen*, 188 N.W.2d 623, 624 n. 2 (Mich. 1971). Thus, if ABFM conducted even the slightest act of business in Michigan, it would be subject to limited personal jurisdiction in Michigan. *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988).

ABFM contends that it has not transacted business within the state because it only responded to Picard's inquiries. ABFM contends that, although Picard accessed its website and

- 9 -

began mail and e-mail correspondence with ABFM in Michigan, ABFM did not take any actions to transact business in Michigan—rather, Picard is the one who initiated each and every contact. ABFM thus argues that responding to Picard's correspondence and maintaining a website is insufficient for the Court to obtain limited personal jurisdiction.

The Sixth Circuit addressed a situation similar to the present one in *Lanier v. American Board of Endodontics*, 843 F.2d 901. In *Lanier*, the Sixth Circuit interpreted Michigan's limited jurisdiction statute, specifically the "transacts any business" prong of Mich. Comp. Laws § 600.715. The plaintiff in *Lanier* was a female endodontist in Michigan who sued the American Board of Endodontics, alleging that it had denied her certification on the basis of sex. The plaintiff brought suit in Michigan against the Illinois-based Board, and the district court dismissed the suit for lack of personal jurisdiction over the Board.

The Sixth Circuit began by determining that the Board's contacts in Michigan were connected entirely to the process of considering the plaintiff's request for certification from the Board. The court noted that the Board transacted business in Michigan by responding to plaintiff's request for a certification application and by advising her of the criteria for eligibility. *Id*. at 906. The Board also exchanged phone calls with the plaintiff regarding the Board's decision to deny her certification. *Id*. The Sixth Circuit described these contacts as "a contractual arrangement whereby the prestige of the Board's certification would be conferred upon [the plaintiff] in Michigan in consideration of her meeting the Board's criteria for certification eligibility . . . ." *Id*. The Sixth Circuit thus concluded that "[p]lainly, the Board's contacts with [the plaintiff] in Michigan were for purposes of establishing a business relationship . . . ." *Id*.

In addition to the Board's intent to establish a business relationship with a Michigan resident, the Sixth Circuit concluded that the Board had another purpose: "to affect the quality of

- 10 -

dental care being provided to the public in Michigan by raising the standards of endodontic practice." *Id.* By certifying to the Michigan public that Board-certified endodontists have the requisite skills, education, and knowledge, the Board intended to influence the quality of dental care in Michigan, thereby transacting business in the state. *Id.* at 906-07.

After determining that the Board had transacted business in Michigan, the Sixth Circuit concluded that the plaintiff's cause of action "arose out of" the transacted business. *Id.* at 908.

> The application, evaluation and rejection process was *a mosaic of activity* which began with the plaintiff's inquiry of the defendants in Illinois about the requirements for board certification and was concluded with the defendants' advice that the plaintiff was denied certification but was invited to reapply; every step of which was a constituent part of the whole.

*Id.* (emphasis added). The Board's denial of the plaintiff's request for certification necessarily arose out of its assessment of her credentials obtained through its contacts with the plaintiff in Michigan. Thus, the plaintiff's cause of action arose out of the Board's transacting business in Michigan, and the Board was subject to limited personal jurisdiction in Michigan. *Id.*

The situation in the instant case is similar to the situation in *Lanier*. All of Picard's correspondence with ABFM related to Picard's request for re-certification. Despite ABFM's argument that it did not initiate contact and merely responded to Picard's request, those responses are sufficient to conclude that ABFM intended to consider Picard for certification. *Lanier*, 843 F.2d at 910 ("[i]t is worthwhile to point out that the question of which party solicited the business interface is irrelevant, so long as the defendant then directed its activities to the forum resident."). The responses advised Picard that he did not meet the eligibility requirements for certification and invited him to reapply when he did. In addition, like the Board in *Lanier*, ABFM's stated purpose is to "improve[] the quality of medical care available to the public" in Michigan. Resp. at 19. The Court concludes that ABFM's exchange of correspondence with

Picard in Michigan was the transaction of some business in Michigan within the meaning of Mich. Comp. Laws § 600.715.

Furthermore, Picard's suit arises out of the business ABFM transacted Michigan. The process of rejecting Picard's application was the result of the "mosaic of activity" that began with Picard's request for certification and concluded with ABFM's denial. *See Lanier*, 843 F.2d at 908. ABFM's denial of Picard's application was based on information obtained through correspondence that Picard sent from Michigan, and thus Picard's suit arises out of the business ABFM transacted in Michigan. Thus, ABFM is subject to limited personal jurisdiction under Michigan's long-arm statute.

## C

Although Michigan's long-arm statute grants this Court limited personal jurisdiction over ABFM, the exercise of personal jurisdiction must still comply with constitutional due process considerations. Long-arm jurisdiction may only be asserted if (1) ABFM purposefully availed itself of the privilege of conducting activities in Michigan, and (2) ABFM's acts or the consequences of its acts had a substantial enough connection to Michigan to make the exercise of jurisdiction over ABFM reasonable.

Here, ABFM purposefully availed itself of the privilege of conducting activities in Michigan by "improving the quality of medical care available to the public" and by extending its influence and prestige in Michigan. ABFM's intention to extend its influence and prestige in Michigan means that ABFM has the requisite minimum contacts to comply with constitutional due process. *See Lanier*, 843 F.2d at 911 ("Defendants have purposefully availed themselves of the opportunity to gain members and certify members in the state of Michigan. . . .Thus, it is constitutionally fair for the courts in Michigan to exercise jurisdiction over such defendants.")

- 12 -

Accordingly, the Court concludes that ABFM transacted business in Michigan, Picard's claims arise out of the transaction of that business, and that ABFM is therefore subject to limited personal jurisdiction in Michigan.  ABFM's motion to dismiss for lack of personal jurisdiction will be denied.

**D**

ABFM next argues that venue is not proper in the Eastern District of Michigan. It therefore requests that the Court dismiss the complaint for lack of venue, Fed. R. Civ. P. 12(b)(3), or transfer the case to the Eastern District of Kentucky, 28 U.S.C. § 1406(a).

Under 28 U.S.C. § 1391(b)(1) venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Thus, venue will be proper in the Eastern District of Michigan if ABFM "resides" in this district.

Under 28 § 1391(c)(2), a corporation is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction." In other words, personal jurisdiction serves as a proxy for corporate residence. As explained above, ABFM is subject to limited personal jurisdiction in Michigan. However, because Michigan is divided into two judicial districts—Eastern and Western—and § 1391(b)(3) requires this Court to assess ABFM's contacts with the Eastern District as though the Eastern District is a separate state. ABFM will be deemed a resident of the Eastern District of Michigan for venue purposes only if it has sufficient minimum contacts with the Eastern District to subject it to personal jurisdiction. *See Porche v. Pilot & Assocs., Inc.*, 319 F. App'x 619, 620 n. 2 (9th Cir. 2009) (In a multi-district state, a corporation is deemed to reside in any district in that state within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state.).

The test for determining a corporation's residence for venue purposes is the same as for personal jurisdiction. *See Bicicletas Windsor, S.A. v. Bicycle Corp. of America*, 783 F. Supp. 781, 786 (S.D.N.Y. 1992). The Court has already determined that ABFM is subject to limited personal jurisdiction in the state of Michigan because it transacted business in Michigan. All of the correspondence between Picard and ABFM that formed the basis of that business took place in the Eastern District of Michigan. ABFM has thus transacted business in the Eastern District of Michigan, which would subject it to limited personal jurisdiction in the Eastern District it if was a separate state. Therefore, under 28 U.S.C. 1391(b)(1), venue is proper in the Eastern District of Michigan because ABFM is a resident.[2]

Because venue is proper, ABFM's motion to transfer venue under 28 U.S.C. § 1406(a) is without merit. Section 1406(a) applies only when "a case [is filed] laying venue in the *wrong* division or district." (emphasis added). Venue is proper in the Eastern District of Michigan, and therefore ABFM's motion to transfer under 28 U.S.C. § 1406(a) is denied.

### III

In addition to its motion to dismiss for lack of jurisdiction and venue, ABFM also filed a motion to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6). Picard's complaint alleges three claims: (1) ABFM violated Picard's common law due process rights by denying him certification arbitrarily and capriciously; (2) ABFM made defamatory statements regarding the status of Picard's medical license to his employer; and (3) ABFM tortiously interfered with Picard's business relationship and contract with his employer by denying him certification.

---

[2] Both parties' venue arguments focus solely on 28 U.S.C. 1391(b)(2), which provides that venue is proper in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." However, 1391(b)(1) and 1391(b)(2) are alternatives: a plaintiff may choose either one. Because venue is proper under 1391(b)(1), the Court will not address the parties' arguments regarding 1391(b)(2).

- 14 -

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 570).

## A

Picard first claims that ABFM violated his common law due process rights[3] (1) by failing to provide notice and an opportunity to be heard and (2) by failing to follow its own policies in a fair and reasonable manner. Compl. ¶ 45. In response, ABFM argues that Michigan law does not recognize a cause of action for common law due process against private organizations, and even if it did, ABFM afforded Picard due process.

### i

"Many courts . . . recognize that 'quasi-public' professional organizations and accrediting agencies . . . have a common law duty to employ fair procedures when making decisions affecting their members." *Thomas M. Cooley Law School v. American Bar Ass'n*, 459 F.3d 705,

---

[3] Picard is asserting a due process violation under Michigan law only—he does not allege that ABFM violated his constitutional due process rights.

711 (6th Cir. 2006). "Courts developed the right to common law due process as a check on organizations that exercise significant authority in areas of public concern such as accreditation and professional licensing." *Id.* Picard claims that the ABFM is one such organization, and therefore it should have provided him adequate process before denying his request for certification.

Both federal and state courts have held that common law due process claims are cognizable under Michigan law, although judicial review of the claims is extremely limited. *See Dietz v. Am. Dental Ass'n.*, 479 F. Supp. 554, 557 (E.D. Mich. 1979); *James v. Midland Co. Agricultural & Horticultural Society*, 308 N.W.2d 688, 690 (Mich. Ct. App. 1981)., *The Amyotrophic Lateral Sclerosis Ass'n v. Amyotrophic Lateral Sclerosis of Michigan, Inc.*, 2006 WL 2594462, at *8 (E.D. Mich. Sept. 8, 2006). Michigan law prohibits judicial review of the decisionmaking of private associations "[w]here the association provides a speedy and effective means of deciding controversies before it and where there is no evidence of fraud or oppression by the association against the complaining member." *James*, 308 N.W.2d at 690. "Courts have no business regulating the procedures of private associations absent a compelling showing that substantial rights of a member are implicated and there is no reasonable opportunity for the member to effectively assert those rights within the confines of the group." *The Amyotrophic Lateral*, 2006 WL 2594462, at *8.

If a plaintiff makes a "compelling showing" that "substantial rights" are implicated, then the decision of the private association is reviewed under the deferential "arbitrary and capricious" standard. *Foundation for Interior Design Educ. Research v. Savannah College of Art and Design*, 39 F. Supp. 2d 889, 894 n. 1 (W.D. Mich. 1998) (citing *Dietz*, 479 F. Supp. at 557). "Where a professional association has monopoly power and membership in the association

- 16 -

significantly affects the member's practice of his profession, courts will hold the association has a fiduciary duty to be substantively rational and procedurally fair." *Dietz*, 479 F. Supp. at 557. When a member is excluded or expelled for a disciplinary reason, the "professional association must give notice and an opportunity to be heard . . . ." *Id*. But neither notice nor a hearing is required when the decision is based on the member's competence. *Id*. at 558.

Here, the Court cannot conclude that Picard has failed to state a claim for violation of his common law due process rights. ABFM "is the second largest medical specialty board in the United States" and seeks "to promote excellence in medical care" by providing "assurance to the public that certified family physicians possess the knowledge, skills and attitudes necessary to provide quality care to the individual, family and community . . . ." Resp. 4.

Picard has alleged that the importance of ABFM certification is "beyond dispute" because it "is required by hospitals in order to grant staff privileges, health care and insurance plans in order to allow participation, physician groups in order to hire and continue employment, the government for federal approval; and patients even use Board Certification as criteria for selecting a physician for their own medical needs. Resp. at 11. Indeed, Picard claims he was fired as a direct result of his inability to obtain ABFM certification. Whether Picard is ABFM-certified could significantly affect Picard's profession, and therefore ABFM has a fiduciary duty to be substantively rational and procedurally fair when deciding whether to grant an applicant certification.

**ii**

ABFM claims that its decision to revoke Picard's certification was substantively rational and procedurally fair, and therefore it provided Picard with due process. ABFM claims that it revoked Picard's certification because Picard's license had restrictions placed on it by the

Michigan Board of Medicine. ABFM claims that it provided notice of the revocation and allowed Picard the opportunity to appeal the decision to ABFM's Credentials Committee, thereby providing Picard due process. Accordingly, ABFM argues, because Picard was afforded due process, he cannot maintain a claim for violation of his due process rights.

Picard, in contrast, claims the ABFM did not provide him due process because it failed to provide adequate notice and failed to follow its own rules and procedures when deciding whether to revoke his license. First, Picard claims he did not receive adequate notice of the revocation of his certification. Picard claims that ABFM erroneously mailed the notice of revocation to his former employer, who returned the notice to ABFM.[4] Picard argues that because ABFM did not follow up on the returned notice, he learned of the revocation months later from his new employer. Picard contends that he could not have provided a change of address because his "home address was unchanged . . . ." Resp. at 13. Nonetheless, he argues that "ABFM had an obligation to take more care in the delivery of a notification as significant as Board Certification and Eligibility . . . ." *Id*.

Picard also claims that ABFM failed to follow its own policies and procedures by: (1) failing to reinstate his Board Certification after Picard's license was categorized as "Full/Unrestricted"; (2) failing to restore his Board eligibility after stating that his eligibility would be restored; and (3) making "erroneous, arbitrary, unreasonable, capricious and substantively irrational findings, conclusions, and determinations" regarding his certification. Compl. ¶ 46. As a result of ABFM's alleged failure to provide due process, Picard claims that he suffered "loss of job and income, loss of social and professional reputation . . . damage to

---

[4] ABFM contends that Picard should have provided a change of address to ABFM. Picard contends, however, that his "home address was unchanged and he simply ceased working" at his previous place of employment.

employment and professional endeavors," and loss of economic benefits. ¶ 47. Picard has thus made a colorable claim for common law due process violation under Michigan law.

**B**

Picard next alleges that ABFM made defamatory remarks in five letters dated October 5, 2011; January 11, 2013; April 10, 2013; May 8, 2013; and July 10, 2013. Picard claims that the letters made "false and untrue statements" that Picard's medical license was "somehow in violation of and noncompliance with ABFM's standards and guidelines . . . ." Compl. ¶ 53. Picard alleges that these untrue statements "falsely imputed that Dr. Picard committed criminal, immoral, and/or disreputable acts . . . ." *Id*. ¶ 57.

Under Michigan law, a statement is defamatory if it tends to harm the reputation of another by lowering the estimation of that person in the community or by deterring third parties from associating with him. *Whiting v. Allstate Ins. Co.*, 433 F. App'x 395, 397 (6th Cir. 2011) (citing *Smith v. Anonymous Joint Enter.*, 793 N.W.2d 533, 540 (Mich. 2010)). To sustain a claim of defamation, a plaintiff must establish the following elements:

(1) a false and defamatory statement concerning the plaintiff,

(2) an unprivileged communication to a third party,

(3) fault amounting at least to negligence on the part of the publisher, and

(4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication.

*Smith*, 793 N.W.2d at 540. The Court will examine each of the five allegedly defamatory letters in turn.

**i**

Picard's defamation claim arising from the October 5, 2011 letter must be dismissed because it is barred by the one-year statute of limitations for libel and slander claims under Mich.

Comp. Laws § 600.5805(9): "The period of limitations is 1 year for an action charging libel or slander." *See also Romero v. Buhimschi*, 2007 WL 2902896, at *23 (E.D. Mich. Sept. 28, 2007) (dismissing defamation claim filed more than one year after publication of the defamatory statement). Picard did not file this case until October 2013, two years after the allegedly defamatory October 2011 letter was sent. The statute of limitations has already run on Picard's defamation claim regarding the October 2011 letter, and therefore it will be dismissed.

**ii**

Picard's defamation claims regarding the next letter—the January 2013 letter—does not survive a motion to dismiss because the letter does not contain defamatory remarks. A claim for defamation requires a false statement; "[t]ruth is an absolute defense to a defamation claim." *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 700 (1986). Under Michigan law, "[i]f the gist, the sting, of the [statement] is substantially true, the defendant is not liable." *Thomas M. Cooley Law School v. Kurzon Strauss, LLP*, 2013 WL 5603256, at *5 (W.D. Mich. Sept. 30, 2013) (quoting *Fisher v. Detroit Free Press*, 404 N.W.2d 765, 767 (1987)).

Because a statement must be "provable as false" to be actionable, some statements of opinion are not defamatory. *Ireland v. Edwards*, 584 N.W.2d 632, 637 (Mich. Ct. App. 2009). But a writer cannot avoid liability merely by couching an assertion of fact as an opinion. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990). Instead, a court must consider whether "an expression of opinion is capable of bearing a defamatory meaning because it may reasonably be understood to imply the assertion of undisclosed facts that justify the expressed opinion about the plaintiff or his conduct." *Falls v. Sporting News Publishing Co.*, 834 F.2d 611, 616 (6th Cir. 1987). In other words, when the allegedly defamatory statement is an expression of opinion, a court must consider whether it was based on disclosed or undisclosed facts. If it is based on

disclosed facts, readers can assess the facts independently and reach their own conclusions, and the writer would not be liable for defamation. *Whiting v. Allstate Ins. Co.*, 2010 WL 956030 at *6 (E.D. Mich. Mar. 15, 2010). If, however, the opinion is based on undisclosed facts, then the writer may be liable for defamation if those undisclosed facts are false. *Id.*

The January 11, 2013 letter, taken in full context, contains an expression of opinion by the ABFM review board:

> Following a thorough review, it was determined that the Consent Order of July 20, 2011 requiring compliance with the terms of the Monitoring Agreement with the Health Professional Recovery Program is in violation of the ABFM Guidelines for Professionalism, Licensure and Personal Conduct. The Guidelines require Diplomates and candidates to meet the standards of professionalism, personal conduct, and licensure, in order to obtain and maintain certification. In addition, this policy requires all medical licenses held by the physician to be currently valid, full, and unrestricted. A copy of the Guidelines is enclosed for your reference.
>
> Your certification status will remain rescinded until the conditions/restrictions have been removed from your medical license, or you license has been reinstated to a full and unrestricted status.

Resp. Ex. I at 2.

The letter thus begins with a fact: ABFM determined that the Consent Order violated the ABFM's Guidelines for Professionalism. This determination, in turn, was based on ABFM's opinion and interpretation of its own Guidelines.  Picard may disagree with ABFM's opinion that the Consent Order violates the Guidelines, but ABFM's opinion cannot be classified as true or false. A reader of the January letter knows that the ABFM review board based its opinion that the Consent Order violated the Guidelines on the Consent Order itself, and the reader can reach an independent opinion based on his own review of the Consent Order. *See Whiting v. Allstate Ins. Co.*, 2010 WL 956030, at *9 (E.D. Mich. Mar. 15, 2010) (concluding that the statement

- 21 -

"[Employee] violated the Allstate Code of Ethics" was a non-actionable statement of opinion when rendered by the employer and based on disclosed facts).

Expressions of opinion are protected so long as they are based on fully disclosed facts. This includes opinions which reflect poorly on their subject. The January 2013 letter explained that the Consent Order violated ABFM Guidelines and disclosed that the determination was based on the Consent Order's terms. This type of opinion, albeit a negative one, cannot be the basis of a defamation claim.

### iii

Picard's defamation claims regarding the last three letters—the April 2013, May 2013, and July 2013 letters—do not survive a motion to dismiss because the publication of those letters was privileged. Michigan courts have repeatedly recognized that a publication is absolutely privileged if the defamed party invited or consented to the publication. *Romero v. Buhimschi*, 396 F. App'x 224, 237 (6th Cir. 2010) (collecting cases). The privilege applies if "(1) there was either express or implied consent to the publication; (2) the statements were relevant to the purpose for which consent was given; and (3) the publication of those statements was limited to those with a legitimate interest in their content." *Ramsey v. Speedway SuperAmerica, L.L.C.*, 2008 WL 3541206, at *4 (Mich. Ct. App. Aug. 14, 2008).

First, Picard, as subject of the allegedly defamatory letters, consented to the publication of the information in the letters by requesting responses regarding ABFM's certification denial. Second, the statements in the letters, that "Dr. Picard is ineligible for ABFM examination and is ineligible to remain a Diplomate," Resp. Ex. S, and "that the limitations placed against your client's medical license are in violation of the ABFM policies," Resp. Ex. U, are relevant to Picard's request for information concerning his certification denial. And third, these letters were

- 22 -

sent only to persons with a legitimate interest in their content: Picard and his attorney representing him against ABFM. Relying on agency principles, the Sixth Circuit has held that "publication to [a] plaintiff's attorney is not publication to a third party, at least when the communication pertains to the matter for which the attorney was retained." *Snyder v. Ag Trucking, Inc.*, 57 F.3d 484, 489-90 (6th Cir. 1995) (applying Ohio law). Indeed, in a February 2013 letter to ABFM, Picard's attorney represented that Picard had consented to the publication: "[Picard's] permission for all communication and discussion through me, as his attorney, is enclosed." Resp. Ex. L. Picard consented to the disclosure of information regarding ABFM's denial of his certification, and therefore he cannot maintain a defamation claim.

## C

Picard's final claim alleges that ABFM tortiously interfered with his contract and business expectancy with his former employer, MidMichigan. Picard claims he had a valid and advantageous business relationship with his employer, and ABFM intentionally interfered with that relationship by maliciously denying him certification. As a result of this malicious denial, MidMichigan terminated Picard's employment.

Under Michigan law, a plaintiff must establish the following elements to prevail on a tortious interference with a business relationship claim:

> (1) The existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the party whose relationship or expectancy has been disrupted.

*Wausau Underwriters Ins. Co. v. Vulcan Dev., Inc.*, 323 F.3d 396, 404 (6th Cir. 2003) (emphasis added). The third element requires more than just purposeful or knowing behavior on the part for the defendant. *Id*. The plaintiff must also allege that the interference was either (1) a per se

wrongful act or (2) a lawful act done "with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Id.* (quoting *Feldman v. Green*, 360 N.W.2d 881, 891 (Mich. Ct. App. 1984)). "Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *BPS Clinical Labs. V. Blue Cross and Blue Shield of Mich.*, 552 N.W.2d 919, 925 (Mich. Ct. App. 1996).

Picard's claim is based on ABFM's conduct in denying him certification. Picard has stated that he and MidMichigan had a business relationship, and that ABFM was cognizant of this relationship as evidenced by the fact that ABFM sent correspondence concerning Picard's certification denial directly to MidMichigan. Picard has also alleged that ABFM maliciously and repeatedly denied him certification, despite statements that it would do so after Picard met certain criteria. And finally, Picard alleges that this malicious denial ultimately resulted in MidMichigan terminating him. Picard has, at least facially, alleged a claim for tortious interference with a business relationship and contract. *See* Fed. R. Civ. P. 9(b) ("Malice . . . may be alleged generally."). Accordingly, the Court will not dismiss Picard's claim for tortious interference with a business relationship and contract.

## IV

In his response, Picard requests that this Court grant leave to amend his complaint "[i]n the event that the Court accepts any of Defendant's arguments" in its motions to dismiss. Resp. 24. However, according to Eastern District of Michigan Local Rule 7.1, motions may not be included within a response. Accordingly, Picard's motion to amend his complaint is not properly before this Court because it is included in his response to Defendant's Motion to Dismiss.

**V**

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2), (ECF No. 5) is **DENIED**. Defendant's motion to dismiss for lack of personal jurisdiction is **DENIED**. Defendant's motion to transfer venue for lack of venue or improper venue is **DENIED**.

It is further **ORDERED** that Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 4) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's claim for defamation is **DISMISSED WITH PREJUDICE**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: April 9, 2014

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 9, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS

---

g

- 25 -