UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

STEVEN PICARD,

                    Plaintiff,                        Case No. 13-cv-14552

v                                          Honorable Thomas L. Ludington

AMERICAN BOARD OF FAMILY MEDICINE,

                    Defendant.

_____/

## ORDER OVERRULING PLAINTIFF'S OBJECTIONS

    On October 31, 2013, Plaintiff Steven Picard filed suit against American Board of Family Medicine ("ABFM"), a medical specialty board that certifies qualified physician candidates in the medical specialty of family medicine. Picard claims that ABFM violated his common law due process rights when it arbitrarily and capriciously revoked his board certification.

    On October 6, 2014, Picard filed a motion to compel answers to interrogatories and production of documents. Specifically, Picard seeks disclosure of information and documents concerning all physicians who were granted or denied ABFM certification while subject to monitoring agreements. On December 5, 2014, Magistrate Judge Patricia T. Morris issued an order denying Picard's motion to compel.

    Picard timely filed objections to the denial of his motion to compel. Picard's objections will be overruled, however, because the decision of Magistrate Judge Morris was not clearly erroneous: the information sought is irrelevant to Picard's claim and would be beyond this

Court's review of Picard's claim.  Accordingly, Picard's motion to compel was appropriately denied.

# I

The decision and order of a non-dispositive motion by a magistrate judge will be upheld unless it is clearly erroneous or contrary to law.  28 U.S.C.  § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993).  A district judge shall consider such objections and may modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.  Fed. R. Civ. P. 72(a).  "The 'clearly erroneous' standard applies only to the magistrate judge's factual findings; his legal conclusions are reviewed under the plenary 'contrary to law' standard . . . .  Therefore, [the reviewing court] must exercise independent judgment with respect to the magistrate judge's conclusions of law." *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 291 (W.D. Mich. 1995) (citing *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992)).  "'An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Mattox v. Edelman*, 2014 WL 4829583, at *2 (E.D. Mich. Sept. 29, 2014) (quoting *Ford Motor Co. v. United States*, 2009 WL 2922875, at *1 (E.D. Mich. Sept. 9, 2009)).

Picard contends that the magistrate judge's order denying his motion to compel was clearly erroneous.  Picard's objections can be broadly divided into two categories: (1) the information he seeks is relevant to his claim of disparate treatment, and (2) he should be permitted to conduct discovery beyond the record that was before ABFM when it revoked his certification.

**II**

Pursuant to Federal Rule of Civil Procedure 26(b)(1), parties to an action are entitled to liberal discovery regarding "any matter, not privileged, which is relevant to the subject matter involved in the pending motion. . . ."  Thus, the only information that can be discovered is information that is relevant to the Plaintiff's claim or the Defendant's defenses to that claim. *See, e.g., Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).

Picard claims that the information he seeks—the files of every physician who was subject to a monitoring agreement—is information relevant to his claim for common law due process.  In his motion to compel, he explains that his common law due process claim alleges that "ABFM applied its Guidelines to Plaintiff differently and disparately from other similarly situation physicians, whose Certification and Eligibility Status were not revoked by ABFM despite being governed by the very same or similar Monitoring Agreements."  Objs. ¶ 2.  Thus, he needs information related to other physicians to determine and/or prove that he was indeed treated differently in violation of his common law due process rights.

And perhaps the information sought would be relevant to the claim—if he had asserted a disparate treatment claim.   A review of Picard's complaint, however, reveals that ABFM allegedly violated common law due process when it: (1) failed to provide "meaningful notice," (2) failed to provide an "opportunity to be heard," and (3) "failed to follow its own standards and policies in a fair and reasonable manner by sending its October 5, 2011 notice of ABFM's revocation . . . to Dr. Picard's former employment with no follow up . . . ."  Compl. ¶ 45.[1]  But not once does Picard allege that he was treated differently from similarly situated applicants.[2]

---

[1] The Complaint provides additional specification of the ways that ABFM allegedly violated Picard's common law due process rights—though it does not mention disparate treatment, even indirectly:

Because Picard did not plead a disparate treatment theory, the information sought is only discoverable if it is relevant to the claims he pleaded. Picard, however, does not contend that the records of other physicians are relevant to his claims; instead, he only emphasizes that the records of other physicians are necessary to show disparate treatment: "Rather, Plaintiff's claims specifically hinge upon ABFM treating Picard differently from other physicians subject to the same Monitoring Agreement. . . ." Objs. ¶ 7.

In other words, Picard has not shown that the records of other physicians subject to monitoring agreements are relevant to a claim he pleaded in his complaint. Instead, he claims that the information is relevant to a claim for disparate treatment, which he did not allege. Thus, to the extent that he seeks discovery for evidence that may be relevant to a claim he did not

---

ABFM violated Dr. Picard's due process rights by failing to follow its own standards and policies in a fair and reasonable manner, including those set forth in ABFM's Professionalism, Licensure and Personal Conduct, in the following ways:

A.     ABFM failed to reinstate Dr. Picard's Board Certification and MC-FP Examination Eligibility upon LARA's July 21, 2011 reinstatement of Dr. Picard's medical license to "Full/Unrestricted Status" and reversal of the March 21, 2001 summary suspension.

B.     ABFM instructed Dr. Picard in or around December 2012 that his Board Certification and MC-FP Examination Eligibility would be restored upon receipt of proof of LARA's reversal of the March 21, 2011 summary suspension, reinstatement of his license to full and unrestricted status, and a current Monitoring Agreement between Dr. Picard and HPRP; but then wrongfully refused to restore his Certification and MC-FP Examination Eligibility on January 11, 2013 and again on May 8, 2013 despite having received all requested items of proof prior to both refusals.

C.     ABFM made erroneous, arbitrary, unreasonable, capricious and substantively irrational findings, conclusions and determinations on January 11, 2013 and again on May 8, 2013 that were not supported by substantial evidence and that were contrary to ABFM's policies, practices and procedures, including, but not limited to, that Dr. Picard's medical license is somehow currently "restricted" and that such designation renders him ineligible for Board Certification and MC-FP Examination Eligibility.

Compl. § 46.
[2] Nor did Picard present this theory of disparate treatment in his response to ABFM's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Resp., ECF No. 11. Instead, Picard reiterated the claims asserted in his complaint: failure to provide him notice, failure to provide an opportunity to be heard, and failure to apply its policies to Picard in a fair manner.

allege, the discovery is not "relevant to the subject matter" and his motion to compel will be denied.

III

In addition to being irrelevant to Picard's pleaded claims, the information Picard seeks is not discoverable given the Court's limited review of his claims.  The Sixth Circuit explained the purpose of common law due process rights:

> Many courts, including this one, recognize that 'quasi-public' professional organizations and accrediting agencies such as the ABA have a common law duty to employ fair procedures when making decisions affecting their members. Courts developed the right to common law due process as a check on organizations that exercise significant authority in areas of public concern such as accreditation and professional licensing.

*Thomas M. Cooley Law School v. ABA*, 459 F.3d 705, 711 (6th Cir. 2006) (citations omitted). But a court's review of professional organizations' decisions is limited; courts review "only whether the decision of an accrediting agency such as the ABA is arbitrary and unreasonable or an abuse of discretion and whether the decision is based on substantial evidence."  *Id*. at 712.

Although the standard of review in common law due process claims appears similar to the standard of review in actions brought pursuant to the Administrative Procedure Act, the Sixth Circuit has noted that review of common law due process claims is even more deferential and circumscribed:

> Although accrediting agencies perform a quasi-governmental function, they are still private organizations.  Courts have made the policy decision to ensure that these organizations act in the public interest and do not abuse their power, but judicial review is limited to protecting the public interest.  Recognizing that "the standards of accreditation are not guides for the layman but for professionals in the field of education," great deference should be afforded the substantive rules of these bodies and courts should focus on whether an accrediting agency such as the ABA followed a fair procedure in reaching its conclusions.  We are not free to conduct a *de novo* review or substitute our judgment for that of the ABA or its Council.

- 5 -

*Id.* at 713 (citing 5 U.S.C. § 706(2)(A) and quoting *Wilfred Acad. of Hair & Beauty Culture v. S. Ass'n of Colls. & Schools*, 957 F.2d 210, 214 (5th Cir. 1992)).   In accordance with this deferential standard of review, a court will be limited to a review of the facts in the record before the accrediting agency.  *See Foundation for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 39 F. Supp. 2d 889, 894 (W.D. Mich. 1998) ("Instead, courts have reviewed denials of accreditation similarly to decisions of administrative agencies, limiting review to the record before the accrediting body at the time of its decision.").  Accordingly, review of ABFM's decision regarding Picard's certification will be limited to the record concerning Picard and will not be extended to ABFM's decisions regarding other physicians.

## A

Picard advances several arguments for expanding the court's review beyond the record (and thereby becoming entitled to more extensive discovery).  First, he claims that caselaw limiting review to the record is distinguishable from the instant case because those cases did not involve claims of disparate treatment: "In contrast, in cases involving allegations of disparate treatment, such as the case at bar, Courts have held that where the matter does not require review of an in-depth evaluative decision, judicial review is proper as to whether an accrediting body provided procedure to an applicant which was different than that afforded to other applicants." Objs. ¶ 8 (emphasis original).  But, as explained above, this case *does not* involve allegations of disparate treatment, because Picard did not make those allegations in his complaint.  Therefore, this claim is quite similar to the cases limiting review to the record because Picard—like the other plaintiffs—did not allege disparate treatment in his complaint.

**B**

Picard next contends that information regarding other physicians should be discoverable because that information was indeed part of the record.  Picard advances isolated statements from ABFM's counsel that, according to Picard, indicate that ABFM considered other physicians' records in denying Picard certification: "ABFM specifically attests to its commitment to a "fair and unbiased review of the facts and the consistent application and enforcement of its policies and procedures," and that ABFM's Guidelines and Policies are "interpreted and enforced consistently and fairly" to all physicians "similarly situated" to Plaintiff."  Objs. ¶ 12.

The quotations Picard relies on are, however, taken out of context.  Regarding the first quotation, it reads in full: "On a personal note, I assure you that ABFM is committed to a fair and unbiased review of the facts and the consistent application and enforcement of its policies and procedures."  Mot. Compel Ex. 6 at 2.  This general "commitment" to a fair review is insufficient to show that the ABFM decisionmakers actually reviewed other physicians' records in denying Picard's certification—especially because ABFM's counsel had previously explained in the letter what ABFM did rely on in making the decision:

> After an internal *review of Dr. Picard's file*, the ABFM staff made an initial determination of the violation, notified Dr. Picard of that determination and afforded Dr. Picard an opportunity to appeal the determination to the ABFM Credentials Committee . . . . Dr. Picard's appeal was presented to the Credentials Committee, which appeal included a thorough consideration and discussion *of the relevant file materials, as supplemented by information submitted by Dr. Picard* in support of his appeal.

*Id*. (emphasis added).  In describing the material that was reviewed by ABFM, no mention is made of other physicians or their records.

Likewise, counsel's May 8, 2013 letter is insufficient to show that ABFM actually relied on other physicians' records in denying Picard's certification. Once again, counsel reiterates that "[t]he Committee reviewed all materials submitted by Dr. Picard, including those supplemental materials . . . . The decision of the Credentials Committee was rendered after a full and thorough considerations of the ABFM Professionalism Policy, the materials submitted on behalf of Dr. Picard, and *in light of the treatment afforded to all similarly situated individuals*." Ex. 6 at 4 (emphasis added). That the ABFM issued a decision "in light of" the treatment of similarly-situated individuals is not enough to show that ABFM actually consulted or relied on other physicians' files. Indeed, Picard does not contest that ABFM has provided him the full and complete record that ABFM used in denying his certification—suggesting that other physicians' records were not part of the administrative record. Def.'s Resp. 10 ("Defendant has produced in discovery all the materials and documents which were considered in the Credentials Committee's review, and Plaintiff cannot cite any material which actually relates to other physicians in the administrative record."). Accordingly, Picard is not entitled to discovery of other physicians' records because they were not part of the record.

## C

Lastly, Picard contends that discovery should be expanded beyond the record because he has "consistently alleged ABFM's bad faith, improper behavior, and bias . . . ." Objs. ¶ 12. Parties may indeed supplement a record if they make "a *strong showing* of bad faith or improper behavior." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (emphasis added); *see also Charter Twp. of Van Buren v. Adamkus*, 188 F.3d 506 (6th Cir. 1999) (noting that "the reviewing court may exercise its discretion to expand or supplement the administrative record," but only in cases involving "exceptional circumstances"); *Weiss v. Kempthorne*, 2009

- 8 -

WL 2095997, at *2 (W.D. Mich. July 13, 2009) ("Supplementation of the record is an unusual action that is rarely appropriate.").

Picard claims that this is an exceptional case because he has repeatedly alleged bad faith against ABFM.  As proof of his consistency, Picard advances numerous instances in which he accuses ABFM of "outrageous neglect," "despicable abuse of power," "unprofessional and disturbing" conduct, among other things.  *See* Mot. Compel 13-14 (collecting references).

But Picard is conflating his repeated *allegations* of bad faith with evidence of bad faith. Bare assertions of bad faith—no matter how numerous, emphatic, or consistently asserted— cannot suffice as actual evidence of bad faith.   Beyond generally claiming that ABFM acted in bad faith in denying his certification, Picard has presented no specific instances that would create an inference of bad faith on the part of ABFM.  Accordingly, Picard has not made the requisite "strong showing" of bad faith by ABFM, and he is not entitled to discovery beyond the record.

## IV

Picard has not shown that Magistrate Judge Morris's Order denying his motion to compel was clearly erroneous, and therefore his objections will be overruled.

Accordingly, it is **ORDERED** that Plaintiff Steven Picard's Objections (ECF No. 27) are **OVERRULED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: December 15, 2014

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 15, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS

---

- 9 -