UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

STEVEN PICARD,

                    Plaintiff,                       Case No. 13-14552

v                                         Honorable Thomas L. Ludington

AMERICAN BOARD OF FAMILY MEDICINE,

                    Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S RESPONSE, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DENYING DEFENDANT'S MOTION IN LIMINE AS MOOT**

On October 31, 2013, Plaintiff Steven Picard, a physician, filed suit against Defendant American Board of Family Medicine ("ABFM"), claiming that ABFM maliciously denied him Board Certification and then made defamatory statements to his employer about the status of his medical license.  Picard alleged (1) violation of common law due process, (2) defamation, and (3) tortious interference with a business relationship and contract. Compl., ECF No. 1. Picard's defamation claim was dismissed for failing to state a claim upon which relief could be granted, and the remaining claims proceeded to discovery. ECF No. 17.

On July 24, 3015 Defendant ABFM filed two motions.  In the first motion, Defendant moves for summary judgment as to Picard's remaining claims. ECF No. 41.  In the second, Defendant argues that the court should exclude the hybrid expert/fact testimony of Dr. Marilyn E. Conlon, Katie Ballinger, and Mary O'Connor pursuant to Federal Rule of Evidence 702 and the Court's role as a gatekeeper under *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  ECF No. 45.  Following Plaintiff's response to Defendant's motion for summary judgment, ECF No. 57, Defendant moved to strike portions of the response for impermissibly

expanding the record. ECF No. 58. Defendant's motion to strike and motion for summary judgment will be granted. Defendant's *Daubert* motion to exclude testimony will be denied as moot.

**I**

ABFM is a corporate medical specialty board that certifies physicians in the medical specialty of family medicine. Mot. Summ. J. 1, ECF No. 41. Incorporated in Missouri in 1969, ABFM is the second largest medical specialty board in the United States. *Id.* at 2. ABFM is a voluntary, not-for-profit, private organization whose purposes include:

- Improving the quality of medical care available to the public

- Establishing and maintaining standards of excellence in the specialty of Family Medicine

- Improving the standards of medical education for training in Family Medicine

- Determining by evaluation the fitness of specialists in Family Medicine who apply for and hold certificates

*Id.* ABFM was founded to "protect the public by assessing and certifying doctors who meet specific educational, training and professional requirements." *Id.*

ABFM is independent from state medical licensing boards. To practice medicine in the United States, doctors must be licensed by the state in which they work. Once a doctor is licensed through the state, he or she may then apply to become Board Certified through ABFM. "Board Certified family physicians voluntarily meet additional standards beyond basic licensing," and Board certification represents that the doctor is qualified to practice in the area of family medicine. Public/Patients, The American Board of Family Medicine (October 15, 2015) https://www.theabfm.org/public/index.aspx. "Board certification is a meaningful indicator that a doctor has the knowledge, experience and skills to provide high-quality patient care. Although

board certification is voluntary, ABFM certification is recognized throughout the world as signifying excellence in the practice of Family Medicine." *Id*. Although ABFM Board Certification is not required to practice medicine in Michigan, it is an advantageous credential to have.

To obtain certification through ABFM, a candidate must satisfy the qualification requirements set forth in ABFM's Guidelines for Professionalism, Licensure, and Personal Conduct. AR0054-57. The Program is comprised of four components: Professionalism, Self-Assessment and Lifelong Learning, Cognitive Expertise, and Performance in Practice. AR0113-60.

The component at issue in this case, Professionalism, requires an ABFM-certified physician to maintain a valid, full, and unrestricted license—as defined by ABFM Guidelines—to practice medicine. AR0041. ABFM policy provides, "[An action] that revokes, restricts or suspends the physician's medical license is a violation of ABFM policy, causing the candidate to remain ineligible until such time as the encumbered license is reinstated in full."   *See* AR0129. In other words, a physician who has had his license suspended will not be eligible to have his ABFM status reinstated until he once again holds an unrestricted license.   A license will be deemed "restricted" if it is:

> subject to special conditions, requirements, or limitations . . . which affect, restrict, alter, or constrain the practice of medicine (including, but not limited to, supervision, chaperoning during patient examination, limitations on the prescription of medicine, or limitation on site or type of practice and limitation on hours of work).

AR0041.

The procedure ABFM follows for decertification decisions and review of those decisions is set forth in the organization's bylaws.  Section 11.1 of the Bylaws establishes a Credentials

Committee for the purpose of interpreting, monitoring, and reviewing grievances, and enforcement of ABFM policies and procedures.  AR0162.  Under section 10.2 of the bylaws, certifications are subject to revocation if its holder at any time "failed to abide by or satisfy the provisions of the policies, procedures, rules or standards established by the ABFM." AR0162. Under section 11.2, If ABFM determines decertification action is appropriate, "the Affected Party shall be notified in writing of the proposed action… and shall be afforded the opportunity of a review of the matter by the Credentials Committee." AR0164.  The affected party has 20 days after receipt of the notice to request a review of the action by the Credentials Committee. *Id*.

The Credentials Committee must meet periodically to review matters properly brought before it. *Id*.  "An Affected Party may present written materials to the Credentials Committee in support of the request of the Affected Party." *Id*.  If the Credentials Committee ultimately reaches a decision unfavorable to the Affected Party, it must notify him or her of the decision within 20 days. *Id*. Decisions of the Credentials Committee are "final, conclusive, and binding" and are not appealable. AR0165.

## A

Plaintiff Picard is a physician licensed with the Michigan Board of Medicine, and he began practicing family medicine in Michigan in 1994. Compl. ¶ 7. In 1998, Picard obtained ABFM Board Certification and Diplomate subspecialist status in 1998 and 2006, and maintained the certification until 2011. *Id*. ¶ 9-10.

Picard, a recovering drug and alcohol addict, suffered a relapse on March 6, 2010. AR-0009.  Picard self-reported the relapse to Michigan's Health Professional Recovery Program

("HPRP).[1]  *Id.*  Following an evaluation, Picard entered into a three-year, non-disciplinary, dual diagnosis HPRP monitoring agreement. AR0010. On June 18, HPRP was informed that Picard had not attended individual therapy session or met with his psychiatrist as required. *Id.*

Picard then entered a 90-day residential treatment program on June 24, 2010. *Id.* On or around September 5, 2010 Picard relapsed on cocaine, and was consequently discharged from the treatment program on September 16, 2010. AR0010-11.  Through October and November, Picard failed to attend appointments and failed to follow through on a variety of recommendations required to complete the treatment program. *Id.*  Picard eventually returned to the treatment program on November 23, 2010 and was discharged on January 3, 2011. *Id.*

On January 26, Picard tested positive for cocaine on a random drug screen. AR0011. HPRP then notified Picard that they were closing his file as non-compliant. AR0012.  On February 22, 2011, HPRP denied Picard's appeal, and forwarded his file to the Michigan Department of Community Health. *Id.*

Subsequently, on March 25, 2011, the Michigan Department of Community Health filed an administrative complaint against Picard, seeking disciplinary action and suspension of Picard's medical license. FS007-14. On the same day, the Michigan Department of Community Health summarily suspended Picard's medical license pending review of the allegations against him. AR0015.  The Department found that the public health, safety, or welfare required the emergency action. *Id.*

On July 20, 2011 the Michigan Board of Medicine Disciplinary Subcommittee issued a consent order, stipulated to by Plaintiff Picard. AR0016, AR0020.  Pursuant to the stipulation, the order found the allegations of fact alleged in the complaint to be true and found that Picard

---

[1] The HPRP is administered through a contract with the Michigan Department of Licensing and Regulatory Affairs, which also oversees the Michigan Board of Medicine. http://www.hprp.org/.

had violated sections 16221(a), (b)(ii), (b)(iii), (b)(xi) and (c)(iv) of the Public Health Code. AR0016. The order then dissolved the summary suspension and provided that Plaintiff's medical license was to be suspended for at least a day. *Id*. The order further provided that Plaintiff's license would be automatically reinstated when the Department received satisfactory evidence from HPRP that Plaintiff had entered into a disciplinary non-confidential monitoring agreement or that HPRP determined Plaintiff did not require treatment monitoring. AR0017.  Plaintiff was also placed on probation for a period of three years commencing on the reinstatement of his license. AR0018.

On July 28, 2011, The Michigan Board of Medicine reinstated Picard's medical license to full/unrestricted status after Picard provided verification that he had entered into a regulatory monitoring agreement with HPRP, to remain effective for at least three years. AR0022. The monitoring agreement required that Picard abstain from ingesting any mood-altering substances, participate in rehabilitation and therapy sessions, and acquire advanced approval before making any changes to his employment. FS0025.  The agreement also provided that Picard could practice medicine only under supervision, to be determined upon employment. *Id*.  Picard's worksite monitor was to file quarterly reports with HPRP, and could require Picard to keep a log of all mood-altering substances that he prescribes or dispenses. *Id*. Furthermore, the agreement limited the number of hours and shifts Picard could work consecutively. *Id*.

In a letter dated October 5, 2011, ABFM informed Picard that it had obtained information from the Michigan Board of Medicine that his license had been subject to disciplinary action. AR0024.   Accordingly, ABFM informed Picard that his Diplomate certification was retroactively rescinded, effective March 28, 2011, and that he had 20 days to request a review of the action. *Id*. Picard claims that he never received the letter, as it was sent to the address of an

old employer.  ABFM, for its part, claims that it was Picard's responsibility to update his mailing and e-mail addresses. *See* AR0257-59.

**B**

On November 2, 2012, Picard obtained employment as a family physician with MidMichigan Community Health Services, a rural community health center located in Houghton Lake, Michigan. AR0030.  Picard informed MidMichigan that he "was ABFM Certified and MC-FP Eligible, held a Full/Unrestricted Michigan medical license, and was DEA-Certified." Complaint ¶ 19.  However, while performing its credentialing process of Picard in December 2012, MidMichigan discovered that Picard was not, in fact, ABFM Board Certified. AR0037.

Picard claims he contacted ABFM about the status of his certification on December 27, 2012. Complaint ¶ 19. He states that an ABFM representative explained that ABFM had sent a notice of Picard's certification revocation to his previous employer on March 28, 2011, and that the revocation was based on the Disciplinary Subcommittee's March 2011 termination of Picard's medical license. *Id*.

Picard replied that (1) he never received notice of a revocation; (2) the suspension of his medical license was made in error; and (3) he now had a "Full/Unrestricted Status" medical license in Michigan. *Id*. ¶ 21.  ABFM allegedly told Picard that it would reinstate his certification if he provided proof that he had an unrestricted medical license.  Picard faxed ABFM proof of his reinstated medical license as well as the Monitoring Agreement. *Id*. ¶ 24.

On January 11, 2013, ABFM e-mailed and mailed a letter to Picard's employer, MidMichigan, stating that the Monitoring Agreement violated ABFM's Guidelines.  AR0043. Accordingly, the letter explained that Picard's certification would "remain rescinded until the conditions/restrictions have been removed from [his] license, or [his] license has been reinstated

- 7 -

to full and unrestricted status." *Id*.  The letter also stated that Picard had twenty days to request a review of the decision. *Id*.

Picard and his counsel timely requested review of the decision, arguing that the State of Michigan Department of Licensing and Regulatory Affairs had deemed his license "Full/Unrestricted." AR0044.  Picard's counsel also sent a letter to ABFM explaining that Picard would lose his job at MidMichigan if he was denied certification. AR0046. ABFM replied that the appeal would be presented at the next meeting of the ABFM Credentials Committee on April 28, 2013.  AR0045. Picard replied that the April date was unacceptable since he claimed that the revocation was ABFM's error and that he was likely to lose his job in the meantime. AR0047.

On February 8, 2013, MidMichigan terminated Picard's employment as a result of his inability to gain ABFM certification. AR0048.

Picard's case was presented to the Credentials Committee for reconsideration on April 28, 2013. AR0001.  The committee consisted of ten members. *Id*. Following a review of Picard's case, a motion was made, seconded, and passed by a unanimous vote to sustain the action to continue the rescission of Picard's certification and eligibility. AR0002.   On May 8, 2013, ABFM notified Picard's counsel by e-mail that the Credentials Committee had denied Picard's appeal because the Monitoring Agreement was a restriction on his medical license. AR0252. ABFM further explained in a July 10, 2013 letter that "the limitations placed against [Picard's] medical license are in violation of ABFM policies on Professionalism," because the "limitations constitute a restriction within the meaning of the policies as defined by ABFM." AR0256. Picard responded by filing the instant action on October 31, 2013. ECF No. 1.

**II**.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted).

The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

**A.**

Picard claims that ABFM violated his common law due process rights[2] (1) by failing to provide notice and an opportunity to be heard and (2) by failing to follow its own policies in a fair and reasonable manner. Compl. ¶ 45. In its motion for summary judgment, ABFM argues that, assuming Michigan law does recognize a cause of action for common law due process against private organizations, ABFM's decision to revoke Picard's certification was both substantively rational and procedurally fair.

**i.**

---

[2] Picard is asserting a due process violation under Michigan law only—he does not allege that ABFM violated his constitutional due process rights.

"Where a professional association has monopoly power and membership in the association significantly affects the member's practice of his profession, courts will hold the association has a fiduciary duty to be substantively rational and procedurally fair." *Dietz*, 479 F. Supp. at 557. When a member is excluded or expelled for a disciplinary reason, the "professional association must give notice and an opportunity to be heard . . . ." *Id*. But neither notice nor a hearing is required when the decision is based on the member's competence. *Id*. at 558.  This common law due process right of action arises out of quasi-public professional organizations' "common law duty to employ fair procedures when making decisions affecting their members." *Thomas M. Cooley Law School v. ABA,* 459 F.3d 705, 711 (6th Cir. 2006) (citations omitted). The cause of action recognizes the significant authority such organizations exercise "in areas of public concern such as accreditation and professional licensing." *Id*.

A court's review of professional organizations' decisions is limited; courts review "only whether the decision of an accrediting agency… is arbitrary and unreasonable or an abuse of discretion and whether the decision is based on substantial evidence." *Id.* at 712. Although this standard of review appears similar to the standard of review in actions brought pursuant to the Administrative Procedure Act, the Sixth Circuit has noted that review of common law due process claims is even more deferential and circumscribed:

> Although accrediting agencies perform a quasi-governmental function, they are still private organizations. Courts have made the policy decision to ensure that these organizations act in the public interest and do not abuse their power, but judicial review is limited to protecting the public interest. Recognizing that "the standards of accreditation are not guides for the layman but for professionals in the field of education," great deference should be afforded the substantive rules of these bodies and courts should focus on whether an accrediting agency… followed a fair procedure in reaching its conclusions. We are not free to conduct a de novo review or substitute our judgment for that of the [organization].

*Id*. at 713 (citing 5 U.S.C. § 706(2)(A) and quoting *Wilfred Acad. of Hair & Beauty Culture v. S. Ass'n of Colls. & Schools*, 957 F.2d 210, 214 (5th Cir. 1992)).

In accordance with this deferential standard of review, a court should limit its review to the facts in the record before the accrediting agency. *See Foundation for Interior Design Educ. Research v. Savannah Coll. of Art & Design,* 39 F. Supp. 2d 889, 894 (W.D. Mich. 1998) ("[C]ourts have reviewed denials of accreditation similarly to decisions of administrative agencies, limiting review to the record before the accrediting body at the time of its decision."). Courts are "not free to conduct a *de novo* review or substitute their judgment for the professional judgment of the [professionals] involved in the accreditation process." *Wilfred Acad.*, 957 F.2d at 214.

**ii**.

As an initial matter, ABFM moves to strike portions of Defendant's response that seek to supplant the record. Def.'s Mot. Strike, ECF No. 58.   With regard to decisions under the Administrative Procedures Act, the Sixth Circuit has cautioned that review of motions for summary judgment may "invite[] improper consideration of evidence outside the administrative record and reliance upon post hoc rationalizations for the agency's action." *Alexander v. Merit Sys. Prot. Bd*., 165 F.3d 474, 480 (6th Cir. 1999).  In deciding such a motion, courts confine their review to the administrative record, "which includes all materials compiled by the agency that were before the agency at the time the decision was made." *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997) (internal quotations omitted).

The Sixth Circuit has allowed evidence outside the administrative record only where the plaintiff makes a showing that (i) there was deliberate or negligent omission of certain documents by the agency, or (ii) the court needs the evidence for certain "background"

information in order to determine whether the agency considered all relevant factors. *See Latin Americans for Social and Econ. Dev. v. Adm'r of Fed. Highway Admin.*, 756 F.3d 447, 464-65 (6th Cir. 2014); *Sierra Club*, 120 F.3d at 638. In either case, the burden is on the plaintiff to make a "strong showing" of bad faith in order to justify supplementing the record. *Latin Americans*, 756 F.3d at 465.

As noted above, the Sixth Circuit has explained that review of common law due process claims is *even more* deferential and circumscribed than review under the Administrative Procedures Act. *See Thomas M. Cooley Law School*, 459 F.3d at 713. Therefore, Plaintiff Picard faces a high burden of showing strong bad faith to justify supplanting ABFM's administrative record.

Plaintiff argues that the deposition testimony of five ABFM members should be considered by the Court. Plaintiff claims that the additional information is needed to explain what happened at the April 28, 2013 meeting regarding Plaintiff's decertification appeal, who voted, and what the vote was. To the contrary, that information is clearly presented on page 1 of the administrative record, which lists the 10 committee members and explains that the vote was unanimous. AR0001-02. Plaintiff's arguments illustrate the very reason for the rule limiting the Court's review. What deponents may or may not testify about remembering years after the fact is not relevant to the question of whether a quasi-public professional organization acted arbitrarily or unreasonably in reaching a certification decision based on the information that was in front of it.

Plaintiff Picard also argues that portions of his own deposition should be admitted for consideration. Plaintiff argues that his testimony provides important background information regarding the nature of the monitoring agreement and its applicability to Picard's employment at

MidMichigan. This information is also irrelevant. The issue in this case is not how Picard interpreted the monitoring agreement or the extent to which the agreement applied to any specific job Picard sought. Instead, the question is whether Defendant ABFM had substantial evidence to support its determination that the Monitoring Agreement constituted a restriction on Picard's medical license.

Picard has not shown that the deposition transcripts contain necessary background information. Nor has he shown that the agency deliberately or negligently omitted any of the information contained in the transcripts from the administrative record. In either case, Picard has failed to meet the high burden of showing strong bad faith on the part of ABFM. Instead, Picard simply offers post-hoc explanations and recollections improper for this Court to consider. For these reasons, and in the strong interest of avoiding "improper consideration of evidence outside the administrative record and reliance upon post hoc rationalizations for the agency's action," Defendant ABFM's motion to strike portions of Plaintiff Picard's response will be granted. *Alexander,* 165 F.3d at 480.

### B.

Defendant ABFM argues that summary judgment is appropriate because its decision to revoke Plaintiff Picard's certification was not arbitrary or unreasonable. "An abuse of discretion can only be found if no evidence supports the decision or if the agency misapplied the law." *Thomas M. Cooley School of Law*, 459 F.3d at 713.

Defendant first argues that summary judgment is appropriate because its decision to rescind Picard's certification was substantively rational based on the evidence. Plaintiff argues that neither of ABFM's decertification decisions was substantively rational. Pl. Br. Response to Mot. for Summ. J. 15.

The bases for ABFM's decisions are supported by the evidence.  From March 25, 2011 to July 28, 2011, Picard's medical license was the subject of disciplinary proceedings in the state of Michigan.  Picard's license was summarily suspended from March 25, 2011 to July 20, 2011.  Although this summary suspension was eventually dissolved on July 20, 2011 pursuant to a consent order, Picard's medical license was still suspended from July 20, 2011 to July 21, 2011. *See* AR 0016-25.

ABFM policy provides, "[An action] that revokes, restricts or suspends the physician's medical license is a violation of ABFM policy, causing the candidate to remain ineligible until such time as the encumbered license is reinstated in full."  *See* AR0129.   Accordingly, ABFM first rescinded Picard's status after receiving notice that Picard's license had been suspended. AR0024. Because the suspension violated ABFM's professionalism requirements, ABFM had substantial evidence to rescind Picard's Diplomate status in the first instance.

ABFM was also justified in its decision to continue the rescission of Picard's certification. Even though the State of Michigan reinstated Picard's Full/Unrestricted license status effective July 21, 2011, Picard was still subject to a three year probation period requiring a regulatory Monitoring Agreement with HPRP. AR0022.  The Monitoring Agreement required Picard's worksite monitor to file quarterly reports with HPRP regarding Picard's performance. AR0025.  It also limited the number of hours that Picard could work consecutively, limiting him to two consecutive 12-hour shifts. *Id*. If Picard failed to comply with the Monitoring Agreement - a condition of his probation - the State of Michigan could again suspend his medical license. AR0016-21.

The ABFM professional licensure requirement provides:

Any license… shall be deemed restricted for purposes of this policy if… the physician… shall have been made subject to special conditions, requirements, or

> limitations, regardless of whether or not such conditions, requirements, or
> limitations are imposed by order of the State Medical Board or are the result of a
> voluntary agreement between the physician and the State Medical Board, such
> conditions to be determined by the Credentials Committee of the [ABFM] as
> those which affect, restrict, alter, or constrain the practice of medicine (including,
> but not limited to, supervision, chaperoning during the examination of patients,
> limitations of prescription of medication, or limitations on site or type of practice
> and limitation on hours of work.

AR0055.  The ABFM could have properly found that the conditions of Picard's Monitoring

Agreement constituted a restriction in violation of ABFM's professionalism standards.  ABFM

could have thus determined that Picard remained ineligible until the encumbered license was

reinstated in full. AR0129.

Plaintiff argues that ABFM is usurping the State's Authority in making such licensing

decisions.  However, the fact that the Michigan Department of Licensing and Regulatory Affairs

considered Picard's license to be Full/Unrestricted is irrelevant.  As explained by the Sixth

Circuit earlier this year:

> Defendants—whose business model depends on certifying some, but not all,
> licensed professionals in their field—have the better argument here. Plaintiffs cite
> no law to support the theory that, while states may impose standards for entry into
> a profession and evaluate candidates accordingly, it would be unconstitutional for
> private organizations of professionals to impose similar standards and evaluation
> schemes. Nor can we think of a reason, especially because, as a general matter,
> the law allows private organizations to differentiate people along more lines than
> it allows the state to.

*Lieberman v. American Osteopathic Ass'n*, 2015 WL 4925719 (6th Cir. 2015).  ABFM as a

professional organization is free to maintain more restrictive standards than state licensing

departments.  Even though the State of Michigan did not view the Monitoring Agreement as a

restriction, ABFM was free to determine that the Monitoring Agreement was a restriction under

its own professional standards.  ABFM's decision to rescind Picard's Diplomate status was

supported by the evidence and thus was substantively rational.

**C.**

ABFM also argues that summary judgment is appropriate because its decision to rescind Picard's Diplomate status was procedurally fair. Plaintiff Picard disagrees, claiming that ABFM violated his common law due process rights by "failing to follow its own standards and policies in a fair and reasonable manner." ECF No. 1, ¶ 46.

As explained by the Sixth Circuit in *Thomas M. Cooley,* "great deference should be afforded the substantive rules of these [accrediting] bodies and courts should focus on whether an accrediting agency ... followed a fair procedure in reaching its conclusions." *Thomas M. Cooley,* 459 F.3d at 713. "When a member is excluded or expelled for a disciplinary reason, the "professional association must give notice and an opportunity to be heard . . . ." *Dietz*, 479 F. Supp. at 557.  To obtain relief, a plaintiff must show that the alleged procedural deficiency resulted in prejudicial error. *Thomas M. Cooley,* 459 F.3d at 716.  "[A] mistake that has no bearing on the ultimate decision or causes no prejudice shall not be the basis for reversing an agency's determination." *Coalition for Gov't Procurement v. Fed. Prison Ind., Inc*., 365 F.3d 435, 468 (6th Cir.2004).

Picard first argues that ABFM's Guidelines are procedurally unfair because they result in different treatment of physicians subject to identical monitoring agreements solely based on whether the monitoring agreement originated from a state approval instead of a state order. Accrediting agencies should be afforded great deference in their interpretation of their substantive rules, and these interpretations should be upheld unless "clearly erroneous." See *Cooley*, 459 F.3d at 714. An accreditor is also "entitled to make a conscious choice in favor of flexible standards to accommodate variation in purpose and character among its constituent institutions...." *Parsons College v. North Central Ass'n of Colleges and Secondary Schools*, 271

- 16 -

F.Supp. 65 (N.D.Ill.1967).   Neither precise definitions nor objective criteria are necessary. *St. Andrews Presbyterian Coll. v. S. Ass'n of Colleges & Sch., Inc.*, 679 F. Supp. 2d 1320, 1329 (N.D. Ga. 2009).   Accordingly, ABFM need not address each Guideline infraction in the exact same way.   ABFM is free to use a flexible approach, considering the specific facts and circumstances of each case.

Furthermore, even if Picard raised a disparate treatment claim on these grounds, which he does not, he would first need to demonstrate that the 14th Amendment applies to quasi-public agencies.   He would then need to show that any category distinctions drawn by ABFM are not rational.   *See Williamson v. Lee Optical of Oklahoma Inc.*, 348 U.S. 483 (1955). This is a high bar, and not one that Picard could meet in this case.   ABFM is free to determine that those physicians facing license restrictions pursuant to a state order are a greater liability than those physicians facing license restrictions with state approval.   In this way, ABFM's Guidelines are not procedurally unfair or arbitrary and capricious.

Picard next argues that the procedures ABFM used in his case were unfair, arbitrary, and capricious.   Here, ABFM sent written notice to the address Picard had provided to it that his certification was suspended. AR0024. Picard was provided the opportunity to appeal the decision within 20 days of receiving the notice.   *Id.*   Picard claims he did not in fact receive notice of the suspension until he was so informed by his new employer, MidMichigan. Compl. ¶ 21. Picard then contacted ABFM, and ABFM allegedly informed Picard that his certification would be reinstated upon ABFM's receipt of written proof that Picard's medical license had been reinstated with no restrictions.   *Id.* at ¶ 24. Picard provided ABFM a copy of his reinstated medical license and the Monitoring Agreement. *Id.* at ¶ 25.

On January 11, 2013, ABFM e-mailed and mailed a letter to Picard's employer, MidMichigan, stating that the Monitoring Agreement violated ABFM's Guidelines. AR0043. The letter also stated that Picard had twenty days to appeal ABFM's decision. *Id*. Picard and his counsel timely appealed. AR0044. Picard's case was presented to the Credentials Committee pursuant to ABFM bylaws for reconsideration on April 28, 2013. AR0001. The committee consisted of ten members. *Id*. Following a review of Picard's case, a motion was made, seconded, and passed by a unanimous vote to sustain the action to continue the rescission of Picard's certification and eligibility. AR0002. Within 20 days, ABFM notified Picard's counsel by e-mail that the Credentials Committee had denied Picard's appeal because the Monitoring Agreement was a restriction on his medical license. AR0252.

Picard first argues that he was denied sufficient notice since ABFM sent the October 2011 notice letter to an old address. To the contrary, as a Diplomate with ABFM, it was Picard's duty to provide ABFM with a correct and updated address. *See* AR0257-59. ABFM sent the notice via certified mail to the address that Picard had provided to them and both parties agree that the correspondence was signed for at that address. ABFM had no duty to "guess" that Picard had not received the notice simply because he did not file an appeal. Any procedural error in this regard was Plaintiff Picard's, not ABFM's.

Picard next argues that the notice ABFM provided was insufficient because ABFM did not adequately explain its reasons for the decertification decision. To the contrary, at each level of the decision ABFM informed Picard of the reasons for its decertification decision. The initial October 5, 2012 letter explained that Picard's Diplomate status and eligibility was rescinded because the summary suspension of his medical license violated ABFM's licensure requirements. AR0024. The January 11, 2013 letter sent after Picard provided ABFM with his

reinstated license and monitoring agreement explained that Picard's certification would remain rescinded because the Monitoring Agreement constituted a restriction under ABFM policy. AR0232. In a phone conversation on February 14, 2013, ABFM further explained to Picard's lawyer that the required approval for place of employment and limits on hours of practice specifically constituted restrictions under its guidelines. *See* AR0237. Following review by the Credentials Committee, ABFM informed Picard in a July 10, 2013 letter that "the limitations placed against [Picard's] medical license are in violation of ABFM policies on Professionalism," because the "limitations constitute a restriction within the meaning of the policies as defined by ABFM." AR0256.

Throughout the decertification process, Picard was afforded both fair notice and fair procedure. Plaintiff's disagreement with ABFM's ultimate decision to rescind his certification does not constitute a violation of due process. *St. Andrews*, 679 F.Supp.2d at 1334. Because ABFM's decision was both substantively rational and procedurally fair, ABFM's motion for summary judgment will be granted with respect to Picard's claim of common law due process.

## III.

Picard's final claim alleges that ABFM tortiously interfered with his contract and business expectancy with his former employer, MidMichigan. Picard claims he had a valid and advantageous business relationship with his employer, and ABFM intentionally interfered with that relationship by maliciously denying him certification. Defendant ABFM moves for summary judgment on this claim as well.

Under Michigan law, a plaintiff must establish the following elements to prevail on a tortious interference with a business relationship claim:

(1) The existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; (2) knowledge of the relationship or

expectancy on the part of the defendant interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the party whose relationship or expectancy has been disrupted.

*Wausau Underwriters Ins. Co. v. Vulcan Dev., Inc.*, 323 F.3d 396, 404 (6th Cir. 2003) (emphasis added). The third element requires more than just purposeful or knowing behavior on the part of the defendant. *Id*. The plaintiff must also allege that the interference was either (1) a per se wrongful act or (2) a lawful act done "with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Id*. (quoting *Feldman v. Green*, 360 N.W.2d 881, 891 (Mich. Ct. App. 1984)). "Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *BPS Clinical Labs. V. Blue Cross and Blue Shield of Mich.*, 552 N.W.2d 919, 925 (Mich. Ct. App. 1996).

Picard's claim is based on ABFM's conduct in denying him certification. Picard has stated that he and MidMichigan had a business relationship, and that ABFM was cognizant of this relationship as evidenced by the fact that ABFM sent correspondence concerning Picard's certification denial directly to MidMichigan. Picard has also alleged that ABFM maliciously and repeatedly denied him certification, despite statements that it would recertify him after he met certain criteria. And finally, Picard alleges that this malicious denial ultimately resulted in MidMichigan terminating him.

Even considering the evidence in a light most favorable to Picard, his claim of tortious interference does not satisfy the third element of the Michigan test. Specifically, Picard has not shown that ABFM's interference was either (1) a per se wrongful act or (2) a lawful act done "with malice and unjustified in law for the purpose of invading the contractual rights or business

- 20 -

relationship of another." *Id*. (quoting *Feldman v. Green*, 360 N.W.2d 881, 891 (Mich. Ct. App. 1984)).

First, Picard has failed to show that notifying MidMichigan of Picard's revoked status and failing to reinstate Picard was per se wrongful. As explained above, ABFM's decisions to uphold the rescission of Picard's certification was both substantively rational and procedurally fair.

Picard has also failed to show that notifying MidMichigan of Picard's revoked status and failing to reinstate Picard was done with malice for the purpose of interfering with Picard's employment. The fact that ABFM had knowledge that its actions would likely lead to a disruption of Picard's employment expectations is not sufficient. For relief, Picard must show that ABFM intended to interfere with his employment with MidMichigan. This Picard has not done. Instead, all of the evidence suggests that ABFM's actions were motivated by legitimate reasons: e.g. establishing and maintaining standards of excellence in the medical specialty of family medicine and determining the fitness of specialists in Family Medicine who apply for and hold certificates. Therefore, ABFM's motion for summary judgment with respect to Picard's tortious interference claim will also be granted.

## IV.

Because Defendant ABFM's motion for summary judgment will be granted as to both of Picard's remaining counts, Picard's complaint will be dismissed and judgment will be entered for ABFM. For this reason, there is no reason to address ABFM's motion in limine at this time, and the motion will be denied as moot.

## V.

Accordingly, it is **ORDERED** that Defendant's motion to strike portions of Plaintiff's response, ECF No. 58, is **GRANTED**.

It is further **ORDERED** that Defendant's motion for summary judgment, ECF No. 41, is **GRANTED**.

It is further **ORDERED** that Defendant's motion in limine to exclude testimony, ECF No. 45, is **DENIED as moot**.

It is further **ORDERED** that Plaintiff Picard's complaint, ECF NO. 1, is **DISMISSED with prejudice**.  This is a final order and closes the case.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: October 22, 2015

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 22, 2015.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager